# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2022

Lyle W. Cayce
Clerk

No. 21-20533
Summary Calendar

---

Dana Dill,

*Plaintiff—Appellant*,

*versus*

Federal Home Loan Mortgage Corporation;
LoanDepot.com, L.L.C.,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4755

---

Before Clement, Ho, and Oldham, *Circuit Judges*.

Per Curiam:*

Dana Dill is a Texas homeowner who sought to refinance her home. In 2016, she obtained a home equity loan. The Federal Home Loan Mortgage Corporation (Freddie Mac) is the owner and holder of the note and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20533

LoanDepot.com, LLC (LoanDepot) is the servicer of the loan.[1]  Dill sued Freddie Mac and LoanDepot (Appellees), arguing that they forfeited their right to all principal and interest from the loan because they failed to cure a defect in the closing documents.  A jury ultimately found in favor of Appellees, the district court denied Dill's motion for a new trial and entered judgment, and Dill appealed.

Dill argues that she is entitled to a free home because she signed her closing documents in the wrong location.  We are unpersuaded.  The parties' closing documents state that § 50(a)(6) of the Texas Constitution strictly governs the loan.  Section 50(a)(6)(N) states that home equity loan closing documents may only be executed "at the office of the lender, an attorney at law, or a title company."  TEX. CONST. art. XVI, § 50(a)(6)(N).  Pursuant to § 50(a)(6)(Q)(x), if a lender fails to comply with § 50(a)(6)(N), they have 60 days to cure their defect.  Failure to cure that defect, however, results in the lender forfeiting "all principal and interest of the extension of credit."  *Id.* at § 50(a)(6)(Q)(x).

Dill claims that Appellees forfeited their rights pursuant to § 50(a)(6)(Q)(x) because: (1) she closed on the loan at her kitchen table; (2) she notified Appellees of this defect a few years later; and (3) Appellees failed to cure the defect.  She also asserts that the district court erred in when it instructed the jury to not only consider whether the contract was breached, but to also consider whether that breach was material and whether Dill was equitably estopped from claiming breach.  But Dill's arguments leave out critical facts; namely, that she: (1) filed this lawsuit even though she was not under threat of foreclosure; (2) testified that she was happy with the terms of

---

[1] JPMorgan Chase Bank briefly served as the servicer of the loan during the initial filing of this lawsuit.

the loan; and (3) swore when executing the notarized loan that she signed it in the appropriate location.

Based on these facts, Dill cannot succeed. Dill invokes § 50(a)(6)(N) as an offensive means to receive a free home; not as a defensive provision to prevent coercion. The text does not support her claim. According to § 50(a)(6)(N), which falls under the heading "Protection of Homestead from Forced or Unauthorized Sale":

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby *protected from forced sale*, for the payment of all debts except for:
>
>> (6) an extension of credit that:
>>
>> (N) is closed only at the office of the lender, an attorney at law, or a title company;

(emphasis added). Read in context, the provision protects homeowners from forced, coercive sales at their homes. *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 588 (Tex. 2013). It does not serve as a weapon for refinancing homeowners who are not in default or threat of foreclosure to get a free loan. *See generally Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016).

Further, the record supports the jury's finding that Dill falsely signed the closing documents with an intent to deceive; Appellees had no means of knowing where Dill signed the documents; and Appellees relied on Dill's *sworn* misrepresentation to their detriment.

AFFIRMED.